AO 91 (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ANNIE GEORGE,
a/k/a Annie Kolath,
a/k/a Sajimol George

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:12-MJ-0113-DRH

U.S. DISTRICT COURT
N.D. OF N.Y
FILED
FEB 27 2012
LAWRENCE K. BAERMAN, CLERK
ALBANY

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From at least, in or about August 2008, through on or about May 3, 2011, in Saratoga County, in the Northern District of New York, defendant did,

encourage and induce an illegal alien to reside in the United States, knowing and in reckless disregard of the fact that such residence was and would be in violation of law,

in violation of Title 8 United States Code, Section 1324(a)(1)(A)(iv) and Title 18 United States Code, Section 2.

I further state that I am a(n) Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached and made a part hereof.     X Yes ___ No

_____
Daria Botten
Special Agent, DHS/ICE/HSI

Sworn to before me, and subscribed in my presence,

February 27, 2012                    at      Albany, New York
        Date                                  City and State

David R. Homer, U.S. Magistrate Judge            _____
Name and Title of Judicial Officer                Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Daria Botten, being duly sworn, depose and state the following:

1. Since June 2003, I have been employed by Immigration and Customs Enforcement, Homeland Security Investigations, within the Department of Homeland Security. I am currently a Special Agent with Homeland Security Investigations (formerly known as Immigration and Customs Enforcement Office of Investigations), with a duty station in Albany, New York. In my capacity as a Special Agent I am authorized to investigate crimes listed in Title 8 of the United States Code and have been involved in investigations of immigration related offenses since October 2003.

2. The facts contained in this affidavit are known to me through personal knowledge and from statements, recordings and reports received from other law enforcement officers during the course of this investigation. As this affidavit is submitted for a limited purpose, I have not included details concerning every aspect of this investigation. Where actions, conversations and statements of others are related herein, they are related only in substance and in part.

3. This affidavit is in support of an application for criminal complaint for Annie GEORGE, a.k.a., Annie KOLATH and Sajimol GEORGE (DOB: 05/14/1972), for a violation of Title 8, United States Code, Section 1324 (a) (1) (A) (iv) (Encouraging and Inducing an Illegal Alien to Come, Enter, or Reside in the United States) and Title 18, United States Code, Section 2 (aiding and abetting).

1

## APPLICABLE LAW

4.  Title 8, United States Code, Section 1324 (a) (1) (A) (iv) prohibits:

(a)(1)(A)   Any person who--

    (iv)   encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law;

## CURRENT INVESTIGATION

5.  On April 27, 2011, Homeland Security Investigations (HSI) office of the Resident Agent in Charge (RAC) in Albany, NY received a lead regarding a situation at 708 Riverview Road, Rexford, NY 12148. The National Human Trafficking Resource Center (NHTRC) 24-Hour National Hotline, based out of Washington, DC, received a report that a person, V.M, was being kept in a forced labor situation at the home by the head of household, Annie GEORGE.

6.  On May 3, 2011, HSI RAC Albany agents went to the residence located at 708 Riverview Road to remove V.M. Beforehand, agents determined that V.M. was a G5 Non Immigrant Visa Overstay who was illegally present in the United States. Agents learned that the residence located at 708 Riverview Road was an approximately 30,000 square foot mansion, containing approximately 34 rooms, including 5 bedrooms and 10 bathrooms, located on approximately 12 acres along the Mohawk River in Rexford, NY.

2

7. When agents knocked at the door, a woman later identified as N.Y., answered and denied knowing V.M., even though agents later found V.M. to be present in the home at that time. After HSI agents showed N.Y. a photo of V.M., she then claimed to have "seen V.M. around," and stated that Annie GEORGE could not come to the door as agents were requesting that she do. Instead, N.Y. relayed messages from agents to Annie GEORGE, and vice versa, shutting the door and leaving agents outside the house all the while. N.Y. finally acknowledged that V.M. was present in the home, but asked agents to return later to pick her up. When agents indicated that they would not leave without V.M., V.M. was released from the home, but without her possessions. Annie GEORGE allowed HSI RAC Albany agents to retrieve V.M. and her belongings from the residence only after communicating with a lawyer, approximately 1 hour and 45 minutes after our arrival at the home. Subsequent investigation disclosed that after agents initially had knocked at the door and announced their identities, Annie GEORGE took V.M. and GEORGE's minor child to the basement of the home while agents waited outside, and advised V.M. to stay in the basement of the residence.

8. After HSI RAC Albany agents took V.M. from GEORGE's residence, they conducted interviews of V.M. Agents employed the assistance of a Hindi speaking translator, as V.M. demonstrated little ability to speak and understand English, and primarily spoke Hindi and Malayalam (an Indian dialect). V.M. reported, in sum and substance, the following facts, among others:

a) V.M. is from the state of Kerala in India and has a 10th grade education.

b) V.M. first entered the US on a G5 Non Immigrant Visa in 1998, and worked as a domestic servant for the family of an employee of the United Nations (U.N.) in the New York City area until October 2005.

3

c) In October 2005, V.M. left the U.N. family (and thereby violated the terms of her G5 Non Immigrant Visa which had allowed her legal residence inside the United States) and travelled to the Albany, NY area to seek employment with Annie GEORGE and GEORGE's husband. V.M. met with Annie GEORGE and her husband at their home. V.M. was promised that Annie GEORGE and her husband would pay approximately $1,000 USD per month, substantially more money than V.M. was paid by the U.N. family. Immediately, V.M. began to work for Annie GEORGE and her husband as a domestic servant.

d) V.M.'s services as a domestic servant for Annie GEORGE and her husband included cooking, cleaning, and child care for the couple's children, which grew in number from five to six during the time that V.M. worked for the family. V.M. resided with the family throughout her period of employment, with food and shelter that Annie GEORGE and her husband provided.

e) At no time prior to, or during, her employment by Annie GEORGE and her husband did V.M. complete an employment application, tax forms, or any other documents related to lawful employment. V.M. further never showed GEORGE or her husband any employment authorization documents or identity documents, both of which V.M. lacked after she left the job with the U.N. family in the New York City area.

f) V.M. communicated with Annie GEORGE, her husband, and other family members, in Malayalam, an Indian dialect common to people who are from the Kerala region of India from which V.M., and Annie GEORGE and her husband derived.

g) V.M. worked as a domestic servant for Annie GEORGE and her husband in two separate residences, in Catskill and Menands, N.Y., respectively, and then moved with the family into the mansion located at 708 Riverview Road, in approximately August 2008.

h) In the 708 Riverview Road home, V.M.'s duties continued to include cleaning the house, preparing meals for the family, and taking care of the children.

i) In June 2009, Annie GEORGE's husband and the family's eldest child died in an airplane crash. After that time, Annie GEORGE and the remaining five children continued to live in the Rexford, NY mansion, and GEORGE continued to employ V.M. as her domestic servant and to shelter V.M. in the home.

j) V.M. described her work hours in the 708 Riverview Road home generally as spanning approximately 5:45 a.m. to approximately 11:00 p.m., every day of the week. V.M. reported that Annie GEORGE and/or her husband provided V.M. no personal or sick days for the entire time V.M was employed by the family. Moreover, V.M. was never taken to a doctor or dentist during the entire period of her employment in the GEORGE's home.

k) V.M. reported that during the years that she worked as a domestic servant for the GEORGE family in the mansion located at 708 Riverview Road, she slept on the floor in a walk-in closet of a bedroom that was shared among the three daughters in the family. The remaining children occupied an adjacent bedroom, while Annie GEORGE (and her husband while he was alive) slept in the master suite on a different floor. Other people

occasionally occupied the remaining bedroom in the home, and a basement living space. Annie GEORGE required that V.M. be near the children at night.

l) V.M. could not drive a car, and rarely left the Rexford, NY residence. V.M.'s family resided in India and did not visit her during the entire period of her employment with the GEORGE family. V.M. asked Annie GEORGE and her husband to allow her to travel to India, but they told V.M. that she lacked immigration documents that would permit such travel. Because V.M. lacked immigration documents, Annie GEORGE once brought V.M. to see an attorney to assist in getting immigration documents that would allow travel. Annie GEORGE and her husband told V.M. that they withheld approximately $4,000 USD from V.M.'s pay for the attorney's fee. Annie GEORGE never informed V.M. of any follow up by the attorney, and V.M. never received immigration documents.

m) Although V.M. had been promised pay of $1,000 per month in exchange for her work, she reported that Annie GEORGE and her husband only paid her a total of approximately $29,000 in compensation between approximately October 2005, and May 2011 (crediting the alleged $4,000 fee to the attorney). This figure represented approximately $37,000 - $38,000 less than V.M. had been promised for her work. V.M. reported that payments had been sporadic over the years, and had almost all been made by cash money transfers from Annie GEORGE and/or her husband to V.M.'s son in India. V.M. reported that she made repeated requests to Annie GEORGE that she be paid the pay that she was owed, but GEORGE failed to pay her and made repeated excuses for not paying her wages. The investigation revealed corroboration, including bank documents and witness statements, regarding the method and minimal amount of payment by Annie GEORGE and/or her

husband to V.M. during the time period of V.M.'s employment with the GEORGE family.

9. An investigation by the United States Department of Labor, Wage and Hour Division, indicates that V.M. was lawfully entitled to pay from Annie GEORGE in, at a minimum, the amount of approximately $77,000 for the last two years of employment as a domestic servant, and in the amount, at a minimum, of approximately $206,000, for the entire approximate six years of V.M.'s work.

10. On June 30, 2011, HSI RAC Albany received three recorded conversations made by V.M.'s son in India. V.M.'s son identified the recordings as telephone conversations that he had with Annie GEORGE after agents had removed V.M. from GEORGE's home in Rexford, NY. V.M. also identified the voices on the recordings. I have obtained translations of the recordings by a Malayalam translator. Given my knowledge of the facts pertaining to this investigation, the statements made by the caller fully suggest that Annie GEORGE is the speaker. In the recordings, GEORGE attempted to learn from V.M.'s son where his mother was located now that she had been taken from GEORGE's home. GEORGE further made efforts to counsel V.M.'s son about what V.M. should tell authorities to explain her presence in GEORGE's home.

11. In one of the recorded conversations, dated June 7, 2011, Annie GEORGE acknowledged that she was aware that V.M. lacked a passport and visa. GEORGE further encouraged V.M.'s son to tell V.M. to conceal from authorities that she was working in V.M.'s home because it was illegal for V.M. to have been working in the United States. Several times during the conversation, GEORGE suggests that V.M.'s son tell his mother to tell the authorities

that she was a relative of GEORGE's family and was only staying at GEORGE's house as a guest. In reference to the day agents had taken V.M. from GEORGE's Rexford, NY residence, GEORGE told V.M.'s son, "we just told them that she was just a family member is all. She is part of the family and that's why she was staying here with us." GEORGE further stated that she had also told her attorney "that she was staying here because she was someone that we had known for a long time and that she was part of the family." In the recording, GEORGE warned V.M.'s son, "if she says anything about working, it would become a big crime. They'll start adding up all the taxes and everything, for all this time."

## CONCLUSION

12. Based upon the above information, I believe that probable cause exists to conclude that from at least in or about August 2008, through on or about May 3, 2011, in the State and Northern District of New York, Annie GEORGE, a.k.a., Annie KOLATH and Sajimol GEORGE (DOB: 05/14/1972), violated Title 8, United States Code, Section 1324 (a) (1) (A) (iv), by encouraging and inducing illegal alien, V.M., to reside in the United States, knowing and in reckless disregard of the fact that such residence was in violation of law, and Title 18, United States Code, Section 2 (aiding and abetting).

_____
Special Agent Daria Botten
Homeland Security Investigations

SUBSCRIBED TO AND SWORN TO
BEFORE ME THIS __27th__ DAY
OF February, 2012

_____
Hon. David R. Homer
United States Magistrate Judge